[No. D024643. Fourth Dist., Div. One. Feb. 24, 1998.]

SAN DIEGUITO PARTNERSHIP, L.P., Plaintiff, Cross-defendant and Appellant, v.
SAN DIEGUITO RIVER VALLEY REGIONAL OPEN SPACE PARK JOINT POWERS AUTHORITY, Defendant, Cross-complainant and Appellant;
SAN DIEGUITO VALLEY, INC., Cross-defendant and Appellant.

CITIZENS FOR PRIVATE PROPERTY RIGHTS, Plaintiff, v.
SAN DIEGUITO RIVER VALLEY REGIONAL OPEN SPACE PARK JOINT POWERS AUTHORITY, Defendant.

912

**COUNSEL**

Worley, Schwartz, Garfield & Rice, Stephenson, Worley, Garratt, Schwartz, Heidel & Prairie and Donald R. Worley for Plaintiff, Cross-defendant and Appellant and for Cross-defendant and Appellant.

Worden, Williams, Richmond & Ellis, D. Dwight Worden and W. Scott Williams for Defendant and for Defendant, Cross-complainant and Appellant.

## Opinion

**HUFFMAN, J.**—In a postjudgment order in this action, the trial court awarded defendant San Dieguito River Valley Regional Open Space Park Joint Powers Authority (JPA)[1] $40,352.40 in attorney fees under an attorney fees provision in an agreement between JPA and plaintiff San Dieguito Partnership, L.P. (Partnership).[2] Partnership appeals from the order, contending the trial court erred in awarding a "lodestar" amount of attorney fees greater than the amount of fees JPA actually incurred in defending this action. Partnership also contends the court erred in refusing to apportion JPA's fees between the contract and noncontract causes of action or, in the alternative, between this action and a related action. JPA also appeals, contending the court erred in refusing to apply a multiplier to the lodestar amount. Because we conclude the trial court erred in awarding JPA more attorney fees than it actually incurred, we reverse the order.

### Factual and Procedural Background

JPA is a public agency created under a joint powers agreement between the County of San Diego and the cities of Del Mar, Escondido, Poway, San Diego, and Solana Beach, to plan and operate a regional park in and around the San Dieguito River Valley. Partnership owns property in the area subject to JPA's powers.

In August 1990, Partnership filed an action against JPA claiming JPA's adoption of a concept plan for the park violated the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). In November 1990, the parties entered into a settlement agreement in which JPA agreed to set aside its approval of the concept plan and conduct an environmental review in accordance with the terms of CEQA and the CEQA guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.) prior to any future approval of the concept plan. In turn, Partnership agreed to dismiss its action against JPA. The settlement agreement contained an attorney fees provision, which provided as follows: "In the event that any suit is brought to enforce any provision of this Agreement, in addition to any damages which may be claimed, the prevailing parties shall be entitled to an award in the amount of attorneys' fees and costs incurred in connection with the prosecution or defense of such action."

In February 1994 JPA adopted a second concept plan and certified a final environmental impact report (EIR). In March 1994, Partnership filed a

---

[1] JPA was erroneously sued as San Dieguito River Park Joint Powers Authority.

[2] Cross-defendant San Dieguito Valley, Inc., is the general partner of Partnership.

petition for writ of mandate and complaint for breach of the settlement agreement against JPA, asserting four causes of action. In its first cause of action (writ of mandate for violation of CEQA), Partnership alleged JPA "failed to comply with its duty to prepare an adequate EIR pursuant to CEQA and its implementing Guidelines." In its second cause of action (breach of settlement agreement), Partnership incorporated all of its earlier allegations and alleged JPA "breached the Settlement Agreement in that it failed to conduct an environmental review in accordance with CEQA and its Guidelines." In its purported third cause of action, Partnership sought injunctive relief based on its earlier allegations. In its fourth cause of action, Partnership sought a declaration that JPA had no power to adopt guidelines for the development of property outside the proposed park. Finally, in its prayer for relief, Partnership requested an award of attorney fees pursuant to the settlement agreement.

JPA answered Partnership's petition and complaint and cross-complained against Partnership and its general partner, San Dieguito Valley, Inc., for breaching the settlement agreement by refusing to dismiss the prior action with prejudice. In both its answer and its cross-complaint, JPA requested an award of attorney fees.

Partnership's action against JPA was consolidated with a related action brought by Citizens for Private Property Rights (Citizens) which also alleged that JPA had violated CEQA. The trial court heard both matters in November 1994 and rendered judgment in favor of JPA on Partnership's petition and complaint and JPA's cross-complaint in March 1995. The judgment against Partnership provided that JPA was entitled to recover its attorney fees and costs pursuant to the settlement agreement in an amount to be fixed by postjudgment motion.

JPA moved for an award of attorney fees in the amount of $57,341.65.[3] The requested amount was based on a lodestar figure of $40,352.40, which was calculated by multiplying the number of hours spent on the case by the normal hourly billing rates of the personnel involved. JPA contended that in calculating the lodestar, the court was required to use "fair market hourly rates" rather than the "below market rates" actually charged to JPA by its counsel.[4] JPA then requested that the court enhance the lodestar by applying a multiplier of 1.5 to that portion of the lodestar attributable to the "merits"

---

[3]JPA also requested, and the court ultimately awarded, $514.78 in costs. No issue has been raised with respect to that portion of the award.

[4]The hourly rates requested by JPA for the two attorneys who worked on the matter were $190 and $180. The rate actually charged to JPA for both attorneys was apparently $110.

of the case (i.e., excluding the time spent on the motion for attorney fees) because of the "somewhat novel and difficult" nature of the issues involved and the quality of the result achieved.

In opposing the motion for attorney fees, Partnership argued that under the terms of the fee provision in the settlement agreement, JPA was not entitled to a lodestar amount or a multiplier but could recover only those fees it actually incurred. Based on the documentation submitted by JPA in support of its motion, Partnership asserted that JPA had actually incurred only $24,924.70 in attorney fees. Partnership further argued that the court should apportion the attorney fees JPA actually incurred between the contract cause of action and the noncontract causes of action. In the alternative, Partnership argued that the court should allocate one-half of the fees incurred by JPA in defending the CEQA issues to the action brought by Citizens.

The trial court awarded JPA attorney fees in the requested lodestar amount of $40,352.40, but concluded the terms of the settlement agreement precluded the use of a multiplier. The court further concluded apportionment of fees between the contract and noncontract causes of action was not appropriate because "all of the claims involved a common core of facts and were based on related legal theories." Both parties appeal from the order awarding attorney fees.

Discussion

I

*Enhancement of Fees*

Both Partnership and JPA raise enhancement issues regarding the fee award in this case. Partnership contends the trial court erred in awarding JPA a lodestar amount, while JPA contends the trial court erred in refusing to apply a multiplier.[5] For the reasons that follow, we hold that the trial court erred in awarding JPA a greater amount of attorney fees than it actually incurred in defending against Partnership's action.

Code of Civil Procedure section 1021 sets forth the basic rule in California regarding the recovery of attorney fees. (See *Trope* v. *Katz* (1995) 11 Cal.4th 274, 278-279 [45 Cal.Rptr.2d 241, 902 P.2d 259].) That statute states in pertinent part that "[e]xcept as attorney's fees are specifically provided for

---

[5]Partnership also contends the court erred in refusing to apportion the attorney fees JPA actually incurred. We address that contention below in part II.

by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties. . . ."[6] (Code Civ. Proc., § 1021.)

Here, Partnership and JPA agreed that in "any suit . . . brought to enforce any provision of [the settlement agreement], . . . the prevailing parties shall be entitled to an award in the amount of attorneys' fees and costs incurred in connection with the prosecution or defense of such action." Partnership contends that under the terms of this provision, JPA was entitled to recover only those attorney fees it actually "incurred," and the court was without discretion to award a greater amount. In response, JPA contends that when, as here, a contract provides for the recovery of attorney fees "incurred" to enforce the contract, Civil Code section 1717[7] gives the court discretion to fix a "reasonable" amount of attorney fees, which may exceed the amount of fees actually incurred.

Section 1717 provides in pertinent part as follows: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . [¶] Reasonable attorney's fees shall be fixed by the court . . . ." ■ The purpose of section 1717 is "to create a reciprocal right to attorney fees when the contract provides the right to one party but not to the other." (*International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 223 [145 Cal.Rptr. 691, 577 P.2d 1031].) Contractual arrangements regarding the allocation of attorney fees "are subject to the restrictions and conditions of section 1717 in cases to which that provision applies." (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 279.)

■ JPA suggests that by authorizing the court to fix "reasonable attorney's fees," the Legislature intended to allow the court the discretion to award a prevailing party *more* attorney fees than it actually incurred. Such an interpretation of section 1717 is inconsistent with the Supreme Court's recent decision in *Trope* v. *Katz, supra,* 11 Cal.4th 274.

In *Trope,* the Supreme Court examined the language of section 1717 to determine whether the Legislature intended to allow an attorney who represents himself in litigation to recover attorney fees under that statute. In

---

[6] In the absence of an applicable statute or agreement, a party sometimes may recover attorney fees under one of three equitable theories (common fund, substantial benefit, and private attorney general) developed by the California Supreme Court under its inherent authority. (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 279.) None of those theories applies here.

[7] All further statutory references are to the Civil Code.

concluding that the Legislature did not intend that result, the court stated in relevant part as follows: "[B]y its terms section 1717 applies only to contracts specifically providing that attorney fees 'which are *incurred* to enforce that contract' shall be awarded to one of the parties or to the prevailing party. . . . To 'incur' a fee, of course, is to 'become liable' for it (Webster's New Internat. Dict. (3d ed. 1961) p. 1146), i.e., to become obligated to *pay* it. . . . [¶] **(3)** [T]he usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 280, italics in original.) ■ Thus, under the Supreme Court's reading of the statute, the object of the provision in section 1717 allowing the recovery of "reasonable attorney's fees" is to reimburse a party for attorney fees the party has paid, or to indemnify the party for fees the party has become liable to pay, provided the fees so paid or incurred are reasonable. (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 282.)

The cases cited by JPA do not compel a different conclusion. JPA relies first on *Beverly Hills Properties* v. *Marcolino* (1990) 221 Cal.App.3d Supp. 7 [270 Cal.Rptr. 605], in which the court held that a party who receives free legal services, and thus incurs no attorney fees at all, is nonetheless entitled to recover attorney fees under section 1717. *Beverly Hills Properties* is not persuasive because the court's decision was based on the premise that section 1717 is ambiguous because "[i]t does not state who, the prevailing party or the attorney representing him, must incur the legal fees and costs." (221 Cal.App.3d at p. Supp. 11.) That premise was repudiated by the Supreme Court in *Trope.* As previously noted, under the Supreme Court's reading of section 1717, " 'attorney's fees' . . . [are] the consideration that *a litigant* actually pays or becomes liable to pay in exchange for legal representation." (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 280, italics added.)

JPA also relies on *Sternwest Corp.* v. *Ash* (1986) 183 Cal.App.3d 74, 76 [227 Cal.Rptr. 804], in which the court held, without discussion, that a trial court has the discretion to enhance lodestar fees with a multiplier in a contract case under section 1717. In support of its holding, the court cited *Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515 [198 Cal.Rptr. 725]. As we shall explain, however, *Vella* does not support the assertion that section 1717 permits the court to award a prevailing party more attorney fees than it actually incurred.

In *Vella,* the trial court awarded the prevailing party $50,000 in attorney fees. On appeal, both parties argued that the trial court erred in refusing to

award attorney fees under section 1717 in an amount consistent with the contingency fee agreement between the prevailing party and her attorney. (*Vella* v. *Hudgins, supra,* 151 Cal.App.3d at p. 518.) The parties disagreed, however, on the terms of the fee agreement. Under the losing party's interpretation of the agreement, the prevailing party was obligated to pay her attorney only $3,948.26. Under the prevailing party's interpretation, she was obligated to pay $100,969. The appellate court agreed with the prevailing party. (*Id.* at pp. 518-519.) Thus, the trial court's award of attorney fees was actually *less* than the amount of attorney fees the prevailing party actually incurred. It was in this factual context that the court held that a contingency fee agreement "is some evidence of the value of an attorney's services, but as with other items of evidence, it is not controlling." (*Id.* at p. 521.)

Read in light of its underlying facts, *Vella* does not support JPA's assertion that section 1717 authorizes a court to award more fees than the prevailing party actually incurred. Indeed, *Vella* actually supports the opposite conclusion. The court in *Vella* specifically stated that ". . . the award of fees in this case was an item of costs and, thus, *limited to those costs reasonably and necessarily incurred by the prevailing party.*" (*Vella* v. *Hudgins, supra,* 151 Cal.App.3d at p. 519, italics added.) Thus, the decision in *Vella* is entirely consistent with our conclusion here that the trial court did not have discretion under section 1717 to award JPA more attorney fees than it actually incurred.

We need not decide in this case whether the parties to a contract may specifically agree that the court shall have the power to award attorney fees in an amount greater than the prevailing party actually incurs. ▮ For our purposes, it is sufficient to hold that where, as here, the parties specifically agree the prevailing party shall be entitled to an award "in the amount of attorneys' fees and costs incurred," the court has no such power, even under section 1717. (See *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 130 [158 Cal.Rptr. 1, 599 P.2d 83] [the statutory right should be no greater than the contractual right].)

For the foregoing reasons, we hold that the trial court erred in awarding JPA attorney fees in a lodestar amount based on an hourly rate greater than that actually charged to JPA by its attorneys. By the same token, however, the trial court did not err in refusing to apply a multiplier.

II

*Apportionment of Fees*

▮▮ Partnership asserts that the trial court erred in refusing to apportion the attorney fees JPA actually incurred, either between the contract and noncontract causes of action, or between this action and the action

brought by Citizens. We conclude that the trial court acted within its discretion in determining that there should be no apportionment under the facts of this case.

■ "Apportionment of a fee award between fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion." (*Abdallah* v. *United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286].) ■ "A trial court's exercise of discretion is abused only when its ruling ' "exceeds the bounds of reason, all of the circumstances before it being considered." ' [Citation.]" (*Gonzales* v. *Personal Storage, Inc.* (1997) 56 Cal.App.4th 464, 479 [65 Cal.Rptr.2d 473].)

■ Partnership first argues that the trial court should have apportioned the fees JPA incurred between the contract cause of action and the CEQA cause of action, because CEQA contains no provision entitling JPA to recover its attorney fees. We disagree that such apportionment was required here.

In *Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d 124, the Supreme Court set out the general rule regarding apportionment of attorney fees among causes of action: "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." However, the Supreme Court also set out an exception to that rule: "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id.* at pp. 129-130.)

In this case, the settlement agreement between JPA and Partnership required JPA to conduct an environmental review in accordance with the terms of CEQA and the CEQA guidelines. Accordingly, Partnership's cause of action for breach of the settlement agreement and its cause of action for violation of CEQA were each premised on the same issue: whether JPA complied with CEQA in conducting its environmental review.[8] Thus, under the rule stated in *Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d 124, apportionment was not required.

Partnership contends the court should have apportioned the fees because JPA would have been subject to Partnership's claim under CEQA regardless

---

[8]Partnership's cause of action for declaratory relief did not share this common issue; however, JPA did not seek to recover its attorney fees for time specifically attributable to that cause of action.

of the existence of the settlement agreement. That fact is irrelevant. Whenever there is an issue common to a cause of action in which fees are proper and a cause of action in which they are not allowed, it is necessarily true that the prevailing party could have been required to litigate the issue even if the cause of action in which fees are proper had never been brought. Nonetheless, the Supreme Court has held that fees incurred in litigating a common issue qualify for an award. (*Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d at p. 130.)

Under the circumstances of this case, the trial court did not abuse its discretion in refusing to apportion the attorney fees JPA incurred between the contract cause of action and the CEQA cause of action. ▮ Similarly, we conclude the trial court did not abuse its discretion in refusing to allocate some of the fees JPA incurred in litigating its compliance with CEQA to the related action brought by Citizens. Partnership contends that the court should have allocated some of the fees to Citizen's action because JPA would have had to litigate its compliance with CEQA in that action regardless of the action for breach of the settlement agreement brought by Partnership. The converse is equally true, however; JPA would have had to litigate its compliance with CEQA in Partnership's action for breach of the settlement agreement regardless of Citizens' action. Partnership should not be allowed to avoid responsibility for attorney fees, for which it otherwise would have been wholly responsible, simply because of the fortuitous existence of another action by another party raising the same issue.[9] This is especially true given that Partnership first brought the attorney fees provision into play by putting the settlement agreement at issue in its action against JPA.

Partnership contends the action brought by Citizens was the " 'primary' " case because only Citizens, and not Partnership, was directly concerned with "[p]erhaps the most significant deficiency of the EIR," which Partnership claims was the EIR's "failure to fully address the impacts of traffic . . . ." Partnership fails to support this argument by any cite to the record on appeal. Moreover, Partnership fails to show that the alleged difference between its concerns and those of Citizens somehow led to different issues regarding JPA's compliance with CEQA being raised in the two actions, such that allocation of fees would have been proper. In the absence of any such showing, we find no abuse of discretion by the trial court in its refusal to allocate any of JPA's fees to the action brought by Citizens.

[9]We note the same attorneys who represented Partnership in its action against JPA also represented Citizens.

## DISPOSITION

The order is reversed for a redetermination of attorney fees. Each party to bear its own costs on appeal.

Kremer, P. J., and McIntyre, J., concurred.